UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VALERY LATOUCHE,

                              Plaintiff,

          -against-

LIEUTENANT BRIAN J. BODGE, et al.,

          Defendants.

**OPINION & ORDER**

25-CV-01856 (PMH)

Philip M. Halpern, United States District Judge:

Valery LaTouche ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action

pursuant to 42 U.S.C. § 1983 against Lieutenant Brian J. Bodge and Elaine Velez ("Defendants"),

in both their individual and official capacities, alleging violations of his constitutional rights while

he was incarcerated at Sing Sing Correctional Facility. (Doc. 2, "Compl."). Plaintiff presses claims

for: (1) First Amendment retaliation against Defendant Bodge; (2) violations of the Due Process

Clause of the Fourteenth Amendment against both Defendants; (3) violations of the Equal

Protection Clause of the Fourteenth Amendment against both Defendants; and (4) conspiracy

against both Defendants. (Compl. at 4-9).[1] Pending before the Court is Defendants' motion to

dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (6).

Defendants filed their motion to dismiss on October 29, 2025. (Doc. 28; Doc. 29, "Defs.

Br."). Plaintiff's opposition, dated November 29, 2025, was docketed on December 8, 2025, (Doc.

34, "Pl. Br."), and Defendants filed reply on December 15, 2025, (Doc. 35, "Reply").

---

[1] Citations to specific pages of the Complaint and other filings on the docket correspond to the pagination generated by ECF.

For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The Court, for purposes of deciding the pending motion, accepts as true the well-pled factual allegations in the Complaint and draws all reasonable inference in Plaintiff's favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

Plaintiff alleges that, while incarcerated at Sing Sing Correctional Facility, Defendants unlawfully removed him from his position in the facility's law library after he filed a grievance against Defendant Bodge. (*See* Compl.). Defendant Bodge, on the evening of November 23, 2022, "accosted and accused" Plaintiff and another inmate, Brian Johnson, of smoking marijuana in a room in Sing Sing's school building "due to the odor being heavily in the air." (*Id.* ¶ 13). Defendant Bodge threatened to "come after [Plaintiff's] schooling," referring to Plaintiff's participation in Mercy College's Hudson Link program. (*Id.*). Plaintiff was given a urinalysis on November 25, 2022. (*Id.* ¶ 14). Although the preliminary results were positive for the presence of marijuana, the confirmatory test was negative. (*Id.*).

Plaintiff filed a grievance against Defendant Bodge on November 30, 2022. (*Id.*). Defendant Bodge was asked to respond to Plaintiff's grievance, and "per Lt. Bodge's order," Plaintiff was "immediately removed from his law library program . . . on the assumption[] that plaintiff was smoking weed[] in the school facility . . . ." (*Id.*). Defendant Bodge lacked the authority to remove Plaintiff from the Hudson Link program, so he instead targeted Plaintiff's law library position. (Pl. Br. at 10).[2]

---

[2] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *See Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014). Accordingly, the Court

Defendant Velez agreed to Plaintiff's removal because, on May 14, 2022, "plaintiff was issued a misbehavior report for calling her a 'bum bitch'" and due to "several previous incidents [in] which plaintiff received disciplinary sanctions." (Compl. ¶¶ 14, 18). Plaintiff was not issued a misbehavior report for the November 23, 2022 incident. (*Id.* ¶ 14). Plaintiff avers that Mr. Johnson, the other inmate who was found in the school building on November 23, 2022, "was reissued his program after the incident and filing of grievance." (*Id.* ¶ 20). Mr. Johnson was only removed from his program after he tested positive for alcohol. (Pl. Br. at 14).

Plaintiff subsequently filed another grievance against Defendants regarding his removal from the law library program, and the grievance committee agreed with Plaintiff that he was improperly removed from his position. (Compl. ¶ 14). However, the superintendent of the facility denied Plaintiff's grievance and, on appeal, the superintendent's decision was affirmed. (*Id.*).

## **STANDARD OF REVIEW**

I.    Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York*

---

considers on this motion the additional allegations contained in Plaintiff's opposition to the extent they are consistent with the allegations in the Complaint. (*See* Pl. Br.).

*City Dep't of Hous. Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at \*3 (S.D.N.Y. Sept. 10, 2012)).

II.    Rule 12(b)(6) Standard

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 371 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

III.    Documents Considered

Plaintiff filed a twenty-one page opposition to Defendants' pre-motion letter, to which he annexes numerous exhibits. (Doc. 25, "Pl. Opp. Ltr."; Doc. 25-1, "Ex. A"; Doc. 25-2, "Ex. B"). Both Plaintiff and Defendants cite to these exhibits in their briefs. (*See* Defs. Br.; Pl. Br.; Reply).

The majority of the exhibits attached to Plaintiff's opposition letter are not annexed to, integral to the Complaint or incorporated by reference; and, thus, the Court cannot consider them. *See James v. Bradley*, 808 F. App'x 1, 2 (2d Cir. 2020) (summary order) ("We do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 202 (2d Cir. 2013))). "A necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Id.*; *see also K.W. v. City of New York*, No. 24-3042, _ F.4th _, 2026 WL 1391967, at *2 n.5 (2d Cir. May 19, 2026) ("[A] document may only be considered 'integral' to the complaint in a 'narrow set of circumstances, where the plaintiff relies heavily on the document's terms and effect in pleading his claims and there is no serious dispute as to the document's authenticity.'" (quoting *Unites States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021))). While it is evident that Plaintiff possesses the documents attached to his opposition letter, as he filed copies of them, it is not clear that Plaintiff relied on their terms or effect in drafting his complaint.

The only documents which could be considered incorporated by reference or integral to the Complaint are Plaintiff's grievances and appeal (Pl. Opp. Ltr, Ex. A. at 2-4, 16-17), and his urinalysis results (*id.*, Ex. B at 10-11), which Plaintiff references in his Complaint (*see* Compl. ¶ 14). However, even were the Court to consider these extraneous documents in deciding Defendants' motion to dismiss, the result would be the same. Thus, the Court declines to consider any extraneous documents in deciding the instant motion. *Accord Kravtchouk v. City of New York*, No. 16-CV-04787, 2019 WL 4918083, at *4 (E.D.N.Y. Sept. 30, 2019) (declining to consider "documents that [were] potentially subject to judicial notice" because the documents were "not helpful in reaching a decision on the pending motions.").

6

## ANALYSIS

Plaintiff asserts six claims for relief: (1) First Amendment retaliation against Defendant Bodge; (2) violation of due process premised on a liberty interest against both Defendants; (3) violation of due process premised on a property interest against both Defendants; (4) violation of equal protection under a class-of-one theory against both Defendants; (5) violation of equal protection premised under a selective-enforcement theory against both Defendants; and (6) conspiracy against both Defendants. (*See* Compl. at 4-9).

Plaintiff's claims for relief are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id.* "The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I.       Official Capacity Claims

Plaintiff brings his claims against Defendants in both their "individual and official capacity." (Compl. ¶ 2). Insofar as Plaintiff intends to press claims against Defendants in their official capacities, those claims must be dismissed by operation of the Eleventh Amendment.

The Eleventh Amendment directs that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state, or against a state employee acting in his or her official capacity, by one of its own citizens. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office . . . . As such, it is no different from a suit against the State itself.").

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original). To that point, it is well-settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Because the Eleventh Amendment deprives this Court of subject-matter jurisdiction and neither exception applies, Plaintiff's claims for relief are dismissed under Rule 12(b)(1) to the

extent they seek relief against Defendants in their official capacities. This result does not affect the claims against Defendants in their individual capacities. The Court therefore considers Defendants' arguments for dismissal of those claims for relief under Rule 12(b)(6).

II.      First Amendment Retaliation Claim

Plaintiff's first claim for relief is for First Amendment retaliation against Defendant Bodge. Defendants argue, citing the "presumption of proper purpose accorded the acts of prison officials," that there is no causal connection between Plaintiff's filing of a grievance against Defendant Bodge and Plaintiff's removal from his position in the facility's law library. (Defs. Br. at 12, 15 (quoting *Rivera v. Senkowski*, 62 F.3d 80, 86 (2d Cir. 1995)). Defendants contend that Plaintiff's retaliation claim "should be viewed in the context of his status as an I/I" and "given that Defendant Bodge's actions were for the stated purpose of maintaining security, his decision to request Plaintiff's removal from the program should be presumed proper." (*Id.* at 13-14; *see also* Reply at 4). The Court disagrees.

To state a claim for First Amendment retaliation, a plaintiff must allege that: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)). To allege a causal connection, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse

action." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)).

The Second Circuit held in *Rivera* that there is a "presumption of proper purpose accorded the acts of prison officials" which is "particularly strong when officials act pursuant to a duty imposed by a prison regulation which is observed in practice and is essential to prison discipline and order." 62 F.3d at 86. Thus, even where a plaintiff establishes "that a retaliatory motive played a 'substantial part'" in a prison official's adverse action taken against that plaintiff, a prison official can establish that the adverse action would have been taken even "in the absence of the improper reason." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

Here, Plaintiff has adequately pled that his filing of a grievance was a substantial or motivating factor in the adverse action taken against him by Defendant Bodge. Plaintiff alleges that he filed a grievance against Defendant Bodge on November 30, 2022 and was "immediately" removed from his position as a clerk in the law library. (Compl. ¶ 14). The close temporal proximity between Plaintiff's alleged protected activity and the adverse action taken against him is sufficient to establish causation at this stage of the litigation. *See, e.g.*, *Baker v. Powell*, No. 23-CV-01626, 2025 WL 2693629, at *6 (S.D.N.Y. Sept. 22, 2025) (finding plaintiff pled causation for a First Amendment retaliation claim where the adverse action was taken "immediately" after the protected activity).

Furthermore, from the allegations in the Complaint, it is not clear that Defendant Bodge would have removed Plaintiff from his law library position even in the absence of Plaintiff filing a grievance against him. The presumption of proper purpose is not particularly strong here, where there are no allegations that Defendant Bodge was acting "pursuant to a *duty* imposed by a prison regulation . . . ." *Rivera*, 62 F.3d at 86 (emphasis added). Additionally, Defendant Bodge suspected

Plaintiff of smoking marijuana in the prison facility on November 23, 2022, and knew of the results of Plaintiff's positive initial drug test as early as November 25, 2022, but it was not until after Plaintiff filed a grievance that Defendant Bodge sought the removal of Plaintiff from his position. (Compl. ¶¶ 13-14). Interpreting Plaintiff's Complaint "to raise the strongest arguments that [it] suggest[s]," *McPherson*, 174 F.3d at 280 (quoting *Burgos*, 14 F.3d at 790), the Court cannot find at this juncture that Defendant Bodge would have had Plaintiff removed from his law library position even in the absence of Plaintiff's grievance.

Accordingly, Defendants' motion to dismiss Plaintiff's first claim for relief for First Amendment retaliation is denied.

### III.    Procedural Due Process Claims

Plaintiff's second and third claims for relief are for Defendants' alleged violations of his procedural due process rights.

"To prevail on a Fourteenth Amendment procedural due process claim, plaintiffs must show that they 'possessed a protected liberty or property interest, and that [they were] deprived of that interest without due process." *Cutie v. Sheehan*, 645 F. App'x 93, 94-95 (2d Cir. 2016) (summary order) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001)); *see also Grossman v. Axelrod*, 646 F.2d 768, 770 (2d Cir. 1981) ("It is well established . . . that a valid liberty or property interest is an essential prerequisite to the successful assertion of due process rights . . . .").

As Plaintiff concedes, he "has no right to a particular job assignment . . . ." (Compl. ¶ 18). Plaintiff is correct. Myriad cases have held that prisoners have no protected liberty or property interest in a particular job assignment. *See, e.g., Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) ("[A] prisoner in a New York State correctional facility has no protected liberty interest in a

particular job assignment." (citation modified)); *Bussey v. Phillips*, 419 F. Supp. 2d 569, 579 (S.D.N.Y. 2006) ("It is well settled that in New York a prisoner has no protected liberty interest in a job assignment." (citation modified)); *Walker v. Capra*, No. 22-CV-07638, 2024 WL 21938, at *9 (S.D.N.Y. Jan. 2, 2024) ("[P]laintiff does not have a Fourteenth Amendment liberty or property interest in prison work assignments or timely pay."); *Jordan v. Tremblay*, No. 23-CV-00577, 2023 WL 4684831, at *3 (D. Conn. July 21, 2023) ("Inmates have no constitutionally protected liberty or property interest in their job assignment."). The possession of "a protected liberty or property interest" is a prerequisite to any procedural due process claim, *Cutie*, 645 F. App'x at 94-95 (quoting *McMenemy*, 241 F.3d at 286), and Plaintiff has failed to establish that he had such an interest in his law library position. Thus, Plaintiff fails to state a claim against Defendants for violations of his right to due process.[3]

Accordingly, Defendants' motion to dismiss Plaintiff's second and third claims for relief for violations of Plaintiff's due process rights is granted.

IV.    Equal Protection Claims

Plaintiff's fourth and fifth claims for relief are for violations of his equal protection rights under the class-of-one and selective-enforcement theories, respectively.

To proceed under a class-of-one theory, "the plaintiff must demonstrate the existence of a person who is 'prima facie identical' to him or her and who was treated differently." *Baltas v. Erfe*, No. 19-CV-01820, 2020 WL 1915017, at *13 (D. Conn. Apr. 20, 2020) (quoting *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019)); *see also Lepper v. Scordino*, No. 22-1064, 2023 WL 4004220,

---

[3] Defendants also move to dismiss based on the affirmative defense of qualified immunity only as to Plaintiff's two due process claims. (Defs. Br. at 25-27). Given the conclusions reached herein, the Court need not and does not reach this argument regarding qualified immunity.

at *2 (2d Cir. June 15, 2023) (summary order) ("The plaintiff must establish that it is '*prima facie* identical' to a comparator . . . ."). To make such a showing, a plaintiff must demonstrate that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Hu*, 927 F.3d at 92 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)). The class-of-one theory "requires an 'extremely high' degree of similarity between a plaintiff and comparator . . . ." *Id.* at 93.

Under the selective-enforcement theory, a plaintiff "must plausibly allege that any selective treatment they experienced 'was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [them].'" *Williams v. Novoa*, No. 19-CV-11545, 2022 WL 161479, at *9 (S.D.N.Y. Jan. 18, 2022) (quoting *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020)). The selective-enforcement theory is less stringent than the class-of-one theory, as it "merely requires a 'reasonably close resemblance' between a plaintiff's and a comparator's circumstances.'" *Hu*, 927 F.3d at 93. "'Mere failure to prosecute other offenders,' moreover, 'is not a basis for finding a denial of equal protection' under a selective-enforcement theory'" because "[t]he Constitution 'does not require that all evils of the same genus be eradicated or none at all.'" *Lepper*, 2023 WL 4004220, at *1 (quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)).

Both the class-of-one and selective-enforcement theories are "non-class-based equal protection claim[s]," under which the plaintiff "must show that the defendant 'intentionally treated them differently from other[s] similarly situated.'" *33 Seminary LLC v. The City of Binghamton*,

13

670 F. App'x 727, 730 (2d Cir. 2016) (summary order) (second alteration in original) (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)); *see also Lepper*, 2023 WL 4004220, at *2 ("a common element of both claims" is that a plaintiff must be "treated differently from another similarly situated comparator . . . ."). Plaintiff has failed to make such a showing.

The only comparator offered by Plaintiff is Brian Johnson, the other inmate who Defendant Bodge accused of smoking marijuana in Sing Sing's school building.[4] Both Plaintiff and Mr. Johnson were accused of smoking marijuana in Sing Sing's school building, and both were removed from their respective programs. (*See* Compl. ¶¶ 13-14; Pl. Br. at 14). As alleged, Plaintiff was removed after an initial positive drug test, despite his confirmatory test being negative, whereas Brian Johnson was removed only after he tested positive for alcohol. (*See* Compl. ¶ 14; Pl. Br. at 14). As pled, Plaintiff has failed to establish the requisite reasonably close resemblance, let alone extremely high degree of similarity, between himself and Mr. Johnson.

Defendants argue that Plaintiff's extensive disciplinary history establishes that Plaintiff and Mr. Johnson are not similarly situated individuals. (*See* Defs. Br. at 21-22). The Court agrees. Plaintiff pleads that he was issued a misbehavior report by Defendant Velez on May 14, 2022. (Compl. ¶ 14). Plaintiff also states that he was issued several other misbehavior reports, including for "refusing to follow a direct order," "harassment," "a physical altercation in the law library," "creating a disturbance," and "fighting." (Pl. Br. at 7; *see also* Compl. ¶ 18). Plaintiff has not pled that Mr. Johnson has a similar disciplinary history as him. Thus, Plaintiff has failed to establish that he and Mr. Johnson were "similarly situated." *Cf. Reynolds v. Quiros*, 990 F.3d 286, 300-01

---

[4] Plaintiff states in his opposition that "there are no records of any incarcerated being treated like plaintiff" and that "[i]ncarcerated individuals normally are allowed their program once a misbehavior report is issued and sanction have been implemented and served." (Pl. Br. at 16). This argument is entirely conclusory and insufficient to establish that Plaintiff was treated differently than a comparator. *See, e.g., Contiguous Towing, Inc. v. New York*, 202 F. Supp. 3d 269, 276 (E.D.N.Y. Aug. 15, 2016) ("[A] plaintiff[] proceeding on a class of one theory cannot simply state in conclusory fashion that it was similar to a comparator[].").

14

(2d Cir. 2021) (finding "no rational basis" for the classification of the incarcerated plaintiff as "Risk Level 5" where he had "no violent disciplinary history" and two inmates with "records of fighting guards and other inmates" were "classified at Level 4."); *see also Shakur v. Sieminski*, No. 07-CV-01239, 2009 WL 2151174, at *8 (D. Conn. July 15, 2009) ("[Plaintiff] has identified and presented evidence of no other inmates with similar disciplinary history who were treated differently under the same circumstances.").

Further, Plaintiff has failed to allege that he and Mr. Johnson were treated differently. As Plaintiff states, both he and Mr. Johnson were ultimately removed from their programs. (*See* Compl. ¶ 14; Pl. Br. at 14). That Mr. Johnson was only removed after he tested positive for alcohol, whereas Plaintiff was removed despite having a negative confirmatory test for marijuana, is of no moment. *See Vail v. O'Gorman*, No. 19-CV-00034, 2019 WL 1090347, at *6 (N.D.N.Y. Mar. 8, 2019) ("A vague allegation that defendants imposed 'disproportionate punishment' on plaintiff and his co-conspirator does not plausibly allege that the two individuals were treated so differently to support a class-of-one equal protection claim."). Defendants' "[m]ere failure to prosecute" Mr. Johnson as quickly as Plaintiff "is not a basis for finding a denial of equal protection . . . ." *Lepper*, 2023 WL 4004220, at *1 (quoting *LeClair*, 627 F.2d at 608). Thus, Plaintiff has not plausibly alleged differential treatment between himself and Mr. Johnson to support an equal protection claim under either the class-of-one or selective-enforcement theories.

Accordingly, Defendants' motion to dismiss Plaintiff's fourth and fifth claims for relief for violations of Plaintiff's equal protection rights is granted.

V.    Conspiracy Claim

Plaintiff's final claim for relief is for conspiracy. Plaintiff alleges that Defendants "conspired and willfully remov[ed] plaintiff from his assigned program under the guises of security . . . ." (Compl. ¶ 22).

To state a claim for § 1983 conspiracy, a plaintiff must plead: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damage." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "Vague and unsupported allegations of a conspiracy are insufficient to state a claim upon which relief can be granted." *Anderson v. Cnty. of Westchester*, No. 25-CV-08507, 2026 WL 1295853, at *4 (S.D.N.Y. May 11, 2026). "Moreover, a conspiracy claim under Section 1983 requires a plaintiff to state an underlying violation of his constitutional rights." *Id.* "To withstand a motion to dismiss, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end' as well as 'some details of time and place and the alleged effects of the conspiracy.'" *Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-07065, 2019 WL 3821229, at *11 (S.D.N.Y. Aug. 14, 2019) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).

Defendants argue that Plaintiff's conspiracy claim "amount[s] to nothing more than base conjecture" and, regardless, Plaintiff has "fail[ed] to establish that said conspiracy resulted in the violation of his constitutional rights." (Defs. Br. at 24). While Plaintiff has plausibly alleged that Defendant Bodge retaliated against him in violation of his First Amendment rights, the Court agrees with Defendants that Plaintiff's conspiracy claim is conclusory and, thus, Plaintiff fails to state a claim for conspiracy.

16

Plaintiff alleges that Defendants "agreed" and "conspired" to remove him from his law library program. (*See* Compl. ¶¶ 14, 22). Such allegations, without more, are entirely conclusory and the Complaint is otherwise devoid of facts to suggest a conspiracy between Defendants to violate his First Amendment rights. *Accord Harrison v. New York*, 95 F. Supp. 3d 293, 329 (E.D.N.Y. 2015) ("[C]laims alleging conspiracies to violate civil rights must be pleaded with specificity and an otherwise invalid Section 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy.'" (citation modified)). Plaintiff provides no "factual basis supporting a meeting of the minds . . . ." *Harrell*, 2019 WL 3821229, at *11. The fact that both Defendants played a hand in removing Plaintiff from his law library position, does not mean that there was a prior agreement to do so. *Accord id.* ("[T]he fact that all of the Fishkill Officers allegedly cooperated in the assault does not indicate that there was a 'prior agreement' to assault [the plaintiff].").

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.

Plaintiff's second, third, fourth, fifth, and sixth claims for relief alleged against both Defendants are dismissed. Plaintiff's first claim for relief alleged against Defendant Lieutenant Brian J. Bodge in his official capacity is dismissed. Plaintiff's case will proceed against Defendant Lieutenant Brian J. Bodge in his individual capacity on Plaintiff's first claim for relief for First Amendment retaliation. As all claims against Defendant Elaine Velez have been dismissed, she is terminated as a Defendant herein.

Defendant Bodge is directed to file an answer to the Complaint within fourteen (14) days of the date of this Opinion & Order.

17

The Clerk of Court is respectfully directed to: (1) terminate the motion sequence pending at Doc. 28; (2) terminate Elaine Velez as a Defendant; and (3) mail a copy of this Opinion & Order to Plaintiff.

**SO ORDERED.**

Dated:   White Plains, New York
         May 27, 2026

_____
HON. PHILIP M. HALPERN
United States District Judge

18